1
2
3
4
5
6
7
8
9
10

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALLAWAY GOLF COMPANY and DAILEY & ASSOCIATES,<br><br>                              Plaintiff,<br><br>            vs.<br><br><br>SCREEN ACTORS GUILD, INC., TRUSTEES OF THE SCREEN ACTORS GUILD - PRODUCTIONS PENSION PLAN AND TRUSTEES OF THE SCREEN ACTORS GUILD – PRODUCERS HEALTH PLAN,<br><br>                              Defendants. | CASE NO. 07CV0373-LAB (WMc)<br><br>**ORDER DENYING MOTION FOR JUDGMENT ON THE PLEADINGS;**<br><br>**ORDER DENYING LEAVE TO FILE AMENDED COMPLAINT; AND**<br><br>**ORDER DENYING _EX PARTE_ APPLICATION TO STAY PROCEEDINGS**<br><br>[Docket. Nos. 21, 51, 64] |

        Currently pending are three related motions: a motion by certain of the Defendants for judgment on the pleadings ("MJP"), Plaintiffs' motion for leave to file an amended complaint ("Motion to Amend"), and certain Defendants' _ex parte_ application to stay proceedings in light of _Trustees of the Screen Actors Guild-Producers Pension and Health Plans v. NYCA, Inc._, Case no. 07cv56867, currently pending before the Ninth Circuit ("Motion to Stay").

/ / /

1    **I.    Motion to Stay**

2    Defendants and Counter-Claimants Trustees of the Screen Actors Guild-Producers

3    Pension Plan, and Trustees of the Screen Actors Guild-Producers Health Plan (collectively

4    "Trustees") filed this *ex parte* application, arguing staying this action will result in judicial

5    economy.  Plaintiffs oppose the Motion to Stay.  Although staying this action may serve the

6    interests of judicial economy, the Court is also mindful of the need to adjudicate matters in

7    a reasonably timely manner.  *See* Fed. R. Civ. P. 1.  Acknowledging the Ninth Circuit's

8    decision might require modification of this Court's decision or obviate the need for further

9    proceedings, the Court is persuaded the better course is to rule on these related motions

10    now in light of existing precedential authority.

11    In their opposition to the Motion to Stay, Plaintiffs request oral argument on this issue

12    and request sanctions because they believe Trustees' decision to seek *ex parte* relief was

13    inappropriate.  Because of the pending MJP and Motion to Amend, both of which were fully

14    briefed and ready for decision, seeking *ex parte* relief on the limited issue of a stay rather

15    than filing a noticed motion resulted in a considerable savings of time.  Besides, the Motion

16    to Stay is being denied, so Plaintiffs' request for oral argument is moot.

17    **II.    Motion for Judgment on the Pleadings**

18    Trustees moved, pursuant to Fed. R. Civ. P. 12(c) for judgment on the pleadings on

19    Plaintiffs' first claim for relief.  Defendant Screen Actors Guild, Inc. ("SAG") did not join in this

20    motion.  Specifically, Plaintiffs have sought declaratory relief stating they are not liable under

21    the Labor Management Relations Act (LMRA) or Employee Retirement Income Security Act

22    (ERISA) for contributions to the two plans administered by the Trustees (collectively, the

23    "Plans"), because the professional golfers who provide paid endorsements for Plaintiffs are

24    independent contractors.  (Compl. at 7:20–9:15.)  Trustees argue this issue is moot, because

25    whether the professional golfers are employees or independent contractors does not affect

26    Plaintiffs' responsibility for contributing to the Plans.  (MJP at 1:17–2:15.)

27    / / /

28    / / /

1

**A.    Factual Background**

2      The facts, except where noted, are taken from the allegations in the Complaint, and

3  Trustees do not contest them for purposes of this motion.   Plaintiff Callaway Golf

4  ("Callaway") entered into endorsement contracts (the "Endorsement Agreements") with

5  certain professional golfers (the "Golf Professionals") to endorse Callaway's golf equipment.

6  The Golf Professionals agreed to use Callaway's equipment, to wear Callaway's logo while

7  playing in golf tournaments, to make personal appearances at events, and to promote

8  Callaway's products in both print and broadcast media, including television commercials if

9  requested.   The Endorsement Agreements provide that the Golf Professionals are

10  independent contractors.  Trustees are not parties to the Endorsement Agreements.

11      Plaintiff Dailey & Associates ("Dailey") entered into agreements with Callaway for

12  advertising services, and pursuant to these agreements, created television commercials.

13  Dailey also entered into a contract (the "Golf Professionals Agreement") directly with the Golf

14  Professionals to appear in the television commercials. Neither Callaway nor Trustees are

15  parties to the Golf Professionals Agreement.

16      SAG has entered into a collective bargaining agreement ("Commercials Contract")

17  with certain advertising agencies, including Dailey.  Both the Endorsement Agreements and

18  the Commercials Agreement refer to fees at the minimum SAG rate.   The Commercials

19  Contract was modified twice from its 1997 version, in 2000 and again in 2003.   While

20  Callaway was not a party to the Commercials Contract, Callaway reimbursed Dailey for

21  payments made pursuant to the Commercials Contract, believing it was obligated to do so.

22      Plaintiffs' first claim, which is the subject of the MJP, is for declaratory relief that the

23  Plaintiffs have no liability for contributions to the Plans because the Golf Professionals are

24  independent contractors, and such contributions are prohibited under the LMRA and not

25  required by ERISA.

26

**B.    Legal Standards**

27      "Judgment on the pleadings is proper when the moving party clearly establishes on

28  the face of the pleadings that no material issue of fact remains to be resolved and that it is

1    entitled to judgment as a matter of law." *Hal Roach Studios, Inc. v. Richard Feiner and Co.,*

2    *Inc.*, 896 F.2d 1542, 1550 (9th Cir. 1990) (citation omitted). Under Fed. R. Civ. P. 12(c), if

3    matters outside the pleadings are presented and not excluded by the Court, the motion is

4    treated as one for summary judgment under Rule 56.     In addition to pleaded facts, the

5    Court may also consider documents attached to the complaint or referred to in the complaint

6    if its authenticity is not questioned, without converting the motion to a Rule 56 motion. *Stone*

7    *v. Writer's Guild of America West, Inc.*, 101 F.3d 1312, 1313–14 (9th Cir. 1996).

8         Determination of whether the provisions of a contract are "clear and unambiguous,"

9    and interpretation of provisions deemed "clear and unambiguous," are questions of law,

10    allowing summary judgment. *See United Sates v. Sacramento Mun. Util. Dist.*, 652 F.2d

11    1341, 1343–44 (9th Cir. 1981). However, if the Court determines that the contractual

12    language is unclear, even summary judgment is inappropriate, because "differing views of

13    the intent of the parties will raise genuine issues of material fact." *Id*. Not every potential

14    controversy renders contractual language ambiguous, but only genuine ambiguities that

15    could reasonably be interpreted in more than one way. *See United States v. Dahan*, 369 F.

16    Supp.2d 1187, 1190 (holding that mere disagreement about a contract's meaning does not

17    mean the contract is ambiguous, but that a contract is ambiguous only if reasonable people

18    could find its terms susceptible to more than one interpretation) (citing *Kennewick Irrigation*

19    *Dist. v. United States*, 880 F.2d 1018, 1032 (9th Cir. 1989)).

20        **C.**     **Discussion**

21        Under the LMRA, an employer may not generally make contributions to a labor union,

22    but may do so on behalf of employees to a pension or benefits plan. 29 U.S.C. § 186

23    (LMRA, § 302). This is an anti-corruption provision, intended to prevent bribery of employee

24    representatives by employers. *Arroyo v. United States*, 359 U.S. 419, 425–26 (1959).

25    ERISA likewise prohibits contributions inconsistent with law, 29 U.S.C. § 1145 (ERISA,

26    § 515). Contributions may be made only on behalf of true employees, and may not be made

27    on behalf of independent contractors, regardless of how contractual language describes

28    them. *Todd v. Benal Concrete Const. Co., Inc.*, 710 f.2d 581, 584 (9th Cir. 1983).

1    Under *Walsh v. Schlecht*, 429 U.S. 401, 409–10 (1977), however, the LMRA does not

2  dictate how the contributions on behalf of eligible employees are to be measured.  Under the

3  reasoning of *Walsh*, this measure can include even hours worked by non-employees,

4  provided the payments are made for the benefit of eligible employees only. *Id.* at 409.  As

5  Justice White's dissent in that case points out, this results in the employer having to make

6  the same payments regardless of whether the workers whose hours were measured were

7  eligible plan participants. *Id.* at 412.

8    The Seventh Circuit's application of *Walsh*'s holding explains that a collective

9  bargaining agreement may require contributions as measured by hours worked by eligible

10  employees and non-eligible workers alike, provided, contributions are made "on behalf of"

11  or "for the benefit of" eligible employees only.  *Illinois Conference of Teamsters and*

12  *Employers Welfare Fund v. Mrowicki*, 44 F.3d 451, 461 (7th Cir. 1994).  "An employer's

13  obligation to pay into a [section] 302(c)(5) trust can be measured by any standard acceptable

14  to both the union and the employer." *Burke v. French Equipment Rental, Inc.*, 687 F.2d 307,

15  311–12 (9th Cir. 1982) (citing *Walsh*; *Seymour v. Hull & Moreland Engineering*, 605 F.2d

16  1105, 1114–15 (9th Cir. 1979)).  A contract provision requiring an employer to make

17  contributions is not illegal or unenforceable simply because the contributions owed are

18  measured by the hours worked by people who are not eligible beneficiaries under the plan.

19  *Id.* at 312.

20    In *Walsh*, the employer was a signatory to a collective bargaining agreement, but the

21  subcontractor at issue was not.  No one working for the subcontractor, therefore, was an

22  eligible participant.  This did not affect the signatory employer's obligation to make

23  contributions as measured by all hours worked by employees, including those worked by the

24  subcontractor's employees.  As explained in *Mrowicki*, all hours worked should be counted

25  as provided for in the contract, even if worked by workers who under the common law would

26  have been considered independent contractors rather than true employees. 44 F.3d at 461.

27  Therefore, the court merely construed the contract, and did not have to apply the common

28  / / /

1  law test to decide whether the workers in question were employees or independent
2  contractors. *Id.* at 462.

3      Plaintiffs do not dispute the validity of these interpretations, but argue they are
4  inapplicable to the facts of this case.  As Plaintiffs correctly point out, part of the *Walsh*'s
5  holding is that "employers may make contributions only to trust funds established for their
6  own employees, and not for the benefit of a non-employee independent contractor."
7  *Seymour*, 605 F.2d at 1115.  There is no dispute, however, Dailey may make contributions
8  to the Plans, and it is Dailey's obligation that is at stake here.  No party has alleged Callaway
9  is making contributions to the Plans, or that Dailey does not have employees who are eligible
10 for benefits under the Plans.  Callaway reimburses Dailey pursuant to an agreement
11 between those two entities, but this arrangement does not transform Callaway's
12 reimbursements into contributions.

13     Plaintiffs also argue the Commercials Contract includes no subcontracting clause, and
14 that Dailey is therefore not a general contractor nor is Callaway a subcontractor.  (Opp'n to
15 MJP at 12:23–13:4.)  They therefore argue the *Walsh* line of cases is inapplicable.  Plaintiffs
16 have not explained why this distinction is meaningful.  Although a similar independent
17 contractor relationship was at issue in *Todd*, the court relied on the fact that contributions
18 were required on behalf of the independent contractors to reach its decision.  The *Todd*
19 court's treatment of independent contractors suggests work performed by independent
20 contractors is comparable, for these purposes, to work performed by employees of
21 subcontractors.  *See* 710 F.2d at 583 (distinguishing independent contractors from
22 subcontractors' employees in another case on the basis of whether contributions were
23 "measured by" hours worked by non-employees or "on behalf of" non-employees) (citing
24 *Brogan v. Swanson*, 682 F.2d 807, 809 (9th Cir. 1982)).

25     Plaintiffs also attempt to distinguish the *Walsh* line of cases because, they argue, the
26 Commercials Contract requires Dailey to contribute a percentage of performers' gross
27 compensation, and is not based on hours worked.  (Opp'n to MJP at 14:1–16.)  Plaintiffs cite
28 *Todd*'s explanation that *Walsh* stood for the principle that "contributions may reflect work

performed by employees of such independent subcontractors, but only if the amounts are 'measured by' the number of hours worked." 710 F.2d at 583 (citing *Walsh*, 429 U.S. at 407). Their citation misconstrues the language of *Todd*, however. The point of the opinion's explanation was merely to distinguish payments "measured by" hours worked from payments "on behalf of" or "for the benefit of" independent contractors. In *Todd*, the court was dealing with a contract requiring the employer to treat independent contractors as bona fide employees and make contributions on their behalf even though they were not in fact employees. 710 F.2d at 582. The court was not overruling *Burke* and holding that the only acceptable standard for measurement was hours worked. Plaintiffs cite no authority for the proposition that "any standard," *see Burke*, 687 F.2d at 311–12*,* cannot include gross compensation.

Plaintiffs also argue *Walsh* and its progeny do not govern this dispute because section 302(c)(5) of the LMRA requires the detailed basis for contributions to be spelled out in a written agreement with the employer. Plaintiffs point out in *Walsh* and *Mrowicki* a flat amount per hour worked was to be contributed. They do not, however, explain why the percentage of gross compensation provided for in the Commercials Contract does not likewise constitute an adequately detailed basis for the contributions. As with the flat amount per hour worked, the percentage of gross compensation is a figure capable of exact calculation.

It is apparent the parties have no real disagreement regarding the statutory or precedential framework. Rather, their disagreement lies in the proper application of the law to the Commercials Contract. The heart of their disagreement is whether Dailey was contractually obligated to make contributions to the Plans on behalf of the Golf Professionals, or whether the contributions the Commercials Contract obligated Daily to make were measured in part by the Golf Professionals' compensation. This is a matter of contract construction.

As concerns the Commercials Contract, the Counterclaim and MJP muddy the waters somewhat. The Counterclaim, ¶¶ 6 and 7, alleges the Commercials Contract requires

signatory employers to make contributions "on behalf of" performers.  This included the Golf Professionals.     ¶ 17.  The MJP confirms Trustees' understanding that Plaintiffs are challenging their "obligation to pay contributions on behalf of professional golfers whom Plaintiffs characterize as independent contractors and ineligible for benefits."  (MJP at 2:23–25.)  Plaintiffs explain they sought declaratory relief in anticipation of this counterclaim.

Trustees contend, citing the Complaint, Dailey agreed to pay the Golf Professionals SAG scale compensation and to make contributions to the Plans based on this.  (MJP at 5:3–7 (citing Compl., ¶¶ 1–2).)  Trustees also contend the Commercials Contract requires contributions be made based solely on compensation paid for acting services, and not for non-acting endorsement activities.  (MJP at 5:7–11 (citing Compl., ¶¶ 11, 20–24).)  As the Complaint points out, section 45(A) of the 1997 version of the Commercials Contract required Dailey to contribute a percentage of "gross compensation paid to principal performers as herein defined with respect to television commercials . . . ."  (Compl. at 7, ¶ 23.)  It goes on to point out section 6(A) of the Commercials Contract defines  "principal performer" as "[a]nyone, who is seen and who speaks a line or lines of dialogue . . . ."  (*Id.*, ¶ 24.)

In support of their opposition to the MJP, Trustees have submitted the declaration of Wendy Wallace, attesting to the authenticity of certain attached documents.  Among the attached documents are excerpts of the SAG Pension and Health Contributions Report Form (the "Report Form"), which Trustees allege was incorporated into the 2003 version of the Commercials Contract; as well as excerpts of the 1997, 2000, and 2003 versions of the Commercials Contract.

The Report Form puts contributors on notice that only signatories may submit contributions, and that they may only submit contributions "on behalf of eligible Performers." (Wallace Decl. at D-3, D-5.)   The only language in the Report Form arguably supporting Trustees' position is a certification clause, stating "I further certify that they [sic] information contained herein is correct, and that all compensation subject to contributions earned by Performers in our employ during the period covered has been reported herein." (*Id.*) The

Court finds, however, the phrase "in our employ" in the certification clause only is insufficient to create an ambiguity. *Dahan*, 369 F. Supp.2d at 1190.

The apparent meaning of this clause is that a signatory is certifying all compensation paid to performers it utilized in producing television commercials has been reported. While a few cases use "in the employ" to identify an employee as distinct from an independent contractor, *see, e.g.*, *Taylor v. Hubbell*, 188 F.2d 106, 109 (9th Cir. 1951); *Lake Valley Farm Products v. Milk Wagon Drivers' Union, Local 753*, 108 F.2d 436 (7th Cir. 1939), this phrase is also used to describe the utilization of independent contractors. *See, e.g.*, *Cruz v. United States*, 70 F. Supp.2d 1290 (S.D.Fla. 1998) ("[T]he United States was not liable under the FTCA for the acts or omissions of independent contractors in its employ.") Neither this phrase nor its equivalents appear to be terms of art. *See* Black's Law Dictionary 564 (8th Ed. 2004) (defining "employ" solely as a verb, and providing four definitions potentially encompassing various agency relationships). *See also id.* at 566 (in defining "employment," omitting the phrase "in the employ" or any similar phrases). Bearing in mind this phrase occurs only once, in the certification clause, the Court finds nothing in the Report Form to show that only common law employees' compensation must be reported.

The attached excerpts of the 1997, 2000, and 2003 Commercials Contract for the most part agree with this interpretation. Section 46(A) of the 2003 Commercials Contract (Wallace Decl. at E-3), section 46(A) of the 2000 Commercials Contract (*Id.* at F-2), and section 45(A) of the 1997 Commercials Contract (*Id.* at G-2) all provide contributions are to be made as measured by percentages of principal performers' gross compensation. Section 46(G) makes clear not all performers may be eligible for benefits under the Plans, by explaining the Plans are for the purpose of providing benefits only for employees covered by the SAG's various collective bargaining agreements and by providing that the Trustees are solely responsible for determining the rules of eligibility for benefits. (*See id.* at E-4.) Applying this to the Report Form, it is apparent compensation must be reported, and that the Trustees then will decide whether the performer whose compensation was reported is in turn eligible for benefits under the plan. Reporting of compensation and the making of

contributions, on the one hand, are functions of signatory employers, while decisions regarding eligibility are committed to the Trustees, who are not bound by the signatory employer's decision to report compensation and to make contributions.  If the performer whose compensation is reported is not an eligible beneficiary, the effect would be that the contributions would have been made on behalf of other, eligible performers, even though they were based on the compensation of an ineligible performer.  (*See* Wallace Decl. at F3 to F-4 (explaining that the Plans' trust funds are to be used solely to provide benefits to employees covered by SAG's collective bargaining agreements).)

As Plaintiffs point out, however, the Commercials Contract contains an apparent ambiguity.  Section 45(F) of the 1997 Commercials Contract (Wallace Decl. at G-2 to G-3) and section 46(E) of the 2000 and 2003 Commercials Contract (*id.* at E-3 to E-4, F-3) explain in part that, where a signatory either borrows the services of a performer from a loan-out company[1] or contracts directly with a performer to perform both acting and non-acting services, only compensation for acting services is serve as a basis for contributions to the Plans.  Because Golf Professionals contracted directly with Dailey, if the services contracted for included both acting and non-acting services, the compensation could be separated under this provision and contributions would be based solely on compensation for acting services.  The fact that Dailey contracted directly with the Golf Professionals for television commercials suggests this is one of the possible arrangements contemplated by the Commercials Contract.

These sections contemplate the performers' eligibility for benefits in sections 45(F)(4) and (5) of the 1997 Commercials Contract, and 46(E)(4) and (5) of the 2000 and 2003 Commercials Contract, where they discuss the limitations period for bringing actions to collect contributions "on behalf of" the principal performers subject to these kinds of arrangements.  This is where the ambiguity arises.  The enforcement limitations period specifically addresses "contributions on behalf of principal performers" subject to these

---

[1] A loan-out company is an entity through which a performer offers his services to others.  *See, e.g., Home Box Office, Inc. v. Directors Guild of America, Inc.*, 531 F. Supp 578, 597 (S.D.N.Y. 1982).

07cv0373

arrangements, and fails to set any limitations period for contributions measured by the compensation of such performers but not made for their benefit or on their behalf.  No contractual language or evidence is presented to the Court that would explain why performers subject to these types of arrangements — as opposed to performers generally — would be assumed to be eligible Plan participants.  On the basis of the language of this provision, it appears the basis for calculating contributions owed to the Plans is limited to performers who appear to be eligible participants, even though the Trustees will later make the eligibility decision.

It is possible this ambiguity is the result of loose drafting and extrinsic evidence will be needed to clarify it.  It is also possible it can be explained with reference to other contractual language not presented in the briefing on the MJP.  It may also be necessary to consider extrinsic evidence to establish the meaning of the Commercials Contract.  However, based on the evidence before it, the Court cannot resolve the ambiguity.  The Court therefore concludes judgment as a matter of law cannot be granted based on the pleadings; rather, the ambiguity raises an issue of material fact. *Sacramento Mun. Util. Dist.*, 652 F.2d at 1343–44.  The Court could at this point either deny the MJP, which would be appropriate if the ambiguity can be resolved by reference to other contractual language not briefed, or convert the MJP to a Rule 56 motion if extrinsic evidence must be considered, although it is unclear which would be necessary, nor have the parties explained whether either is available.

**III.    Plaintiffs' Motion to Amend**

Defendants have filed their answer to the Complaint.  Plaintiffs have moved for leave to amend the complaint, citing Fed. R. Civ. P. 15(a)'s "very liberal" amendment provision requiring the Court to grant leave freely when justice so requires. *AmerisourceBergen Corp. v. Dialysist West, Inc.*, 465 F.3d 946, 951 (9th Cir. 2006).  This liberal policy "is subject to the qualification that the amendment not cause undue prejudice to the defendant, is not sought in bad faith, and is not futile." *Thornton v. McClatchy Newspapers, Inc.*, 261 F.3d 789, 799 (9th Cir. 2001).

07cv0373

1    Plaintiffs state they have discovered documents shedding light on the nature of the

2  required contributions. (Motion to Amend, at 5:12–28.) They argue their proposed amended

3  complaint merely incorporates newly discovered facts found in these documents. (*Id.* at

4  6:1–11.)

5    Defendant SAG has opposed this motion, arguing the proposed amended complaint

6  eliminates incorrect allegations regarding SAG's claims, and therefore contending

7  amendment under which SAG would remain a party would be futile.  SAG argues Plaintiffs

8  have no claim against it, nor does it have claims against Plaintiffs, and it is not a necessary

9  party.  Therefore, SAG argues, it should simply be dismissed.  SAG's opposition does not,

10 however, show why it would be in any worse position if amendment were allowed rather than

11 denied.  SAG has not moved for dismissal, so the Court would not dismiss it as a party

12 simply on the basis of arguments in its opposition to the Motion to Amend.

13   Trustees also filed their opposition, arguing the allowing proposed sixth and seventh

14 claims, which arise from the newly discovered evidence, would be futile.  The Court has

15 reviewed both this opposition and Plaintiffs' reply, and is persuaded the amendments would

16 be futile.  The authority Trustees cite, *Southern California Retail Clerks v. Bjorklund*, 728

17 F.2d 1262, 1265 (9th Cir. 1984) and *Southwest Admin. v. Rozay's Transfer*, 791 F.2d 769,

18 773 (9th Cir. 1986) make clear that under 29 U.S.C. § 1145 (ERISA § 306(a)), an employer

19 is obligated to make payments to a multiemployer plan unless such payments are prohibited

20 by law.  No party has contested Dailey is an employer (although Plaintiffs contend Daily was

21 not the Golf Professionals' employer).  If Dailey is an employer, it owes contributions unless

22 they are illegal. 29 U.S.C. § 1145.  The legality of the contributions at issue here does not,

23 however, appear to be the subject of the sixth and seventh claims.

24   Plaintiffs cite *Plucinski v. I.A.M. Nat'l Pension Fund*, 875 F.2d 1052, 1058 (3d Cir.

25 1989) for the principle that an employer has a cause of action to recover contributions paid

26 due to fraud or mistake.  In this Circuit, employers may bring actions to recover payments

27 mistakenly made to a trust fund pursuant to 29 U.S.C. § 1103(c) (ERISA § 403(c)).  *Alaska*

28 *Trowel Trades Pension Fund v. Lopshire*, 103 F.3d 881, 885 (9th Cir.1996).  *See also*

*Trustees of Operating Engineers Pension Trust v. Tab Contractors, Inc.* 224 F. Supp.2d 1272, 1282–83 (D.Nev. 2002) (explaining that in spite of changes in the law, Ninth Circuit decisions holding employers have a right to sue for mistaken contributions under ERISA are still good law). While the sixth claim does not say so directly, it appears to be suggesting that the amount of contributions is arbitrarily selected. If this claim were accepted at face value, the Trustees' allegedly arbitrary and capricious application of those guidelines would render virtually all contributions involving application of guidelines uncollectible. (*See* Motion to Amend at 15:21–22 (alleging the guidelines are unenforceable because Trustees apply them arbitrarily and capriciously).) Plaintiffs' Motion to Amend does not, however, show why uneven application of the guidelines to a wide range of employers would be actionable, or that inaccurate calculation of amounts owed means nothing at all is owed.

It may be that Plaintiffs are intending to challenge the Trustees' interpretation of the guidelines, to which the Court would ordinarily defer unless they were shown to be arbitrary, capricious, or contrary to law. *See Board of Trustees of the Watsonville Frozen Food Welfare Trust Fund v. Cal. Cooperative Creamery*, 877 F.2d 1415, 1420 (9th Cir. 1989). Plaintiffs have not, however, explained this or shown why declaratory relief would be available under this theory. Such a finding would depend on examining the Trustees' actual interpretation, not on a showing that the Trustees had been arbitrary and capricious in interpreting the guidelines in other situations.

In fact, it appears this claim relates to the manner of calculating contributions owed, and not whether any contributions at all are owed. Another way of stating this argument would be to say that the contributions Dailey paid were not actually owed, or at least not owed in full. If Dailey mistakenly paid contributions based on the Golf Professionals' gross compensation (as well as on the basis of Dailey's employees' gross compensation), Dailey would have a cause of action for restitution, as explained in *Alaska Trowel*. Although Plaintiffs assert Callaway also has a claim for restitution (Reply to Opp'n to Motion to Amend, at 5:8–10), Callaway merely reimbursed Dailey for Dailey's contributions; it made no

/ / /

1   contributions of its own.  While this proposed claim might be saved by amendment, adding

2   the amendment in its present condition would be futile.

3       Plaintiffs, as the party seeking to invoke the Court's jurisdiction, has the burden of

4   pleading facts to show they have standing to pursue their claims.  *Schmier v. U.S. Court of*

5   *Appeals for the Ninth Circuit*, 279 F.3d 817, 821 (9th Cir. 2002).  The proposed amended

6   complaint's seventh claim, that Trustees lacked authority under the trust agreement to adopt

7   or apply the guidelines at all.  Plaintiffs have not, however, pleaded facts showing they have

8   standing to challenge the Trustees' actions, nor have they briefed this issue in connection

9   with their Motion to Amend.  The trust agreements do not exist for Plaintiffs' benefit and

10  Plaintiffs have not alleged they are parties to these agreements or have standing for any

11  other reason.  *See* 29 U.S.C. § 1132(a) (ERISA § 502(a)) (providing for civil enforcement of

12  ERISA).

13      The parties have also briefed the issue of the 2003 Commercials Contract's arbitration

14  clause.  Plaintiffs contend the Court cannot consider this clause in ruling on the Motion to

15  Amend.  (Reply to Opp'n to Motion to Amend at 5:17–6:6.)  The Court need not reach this

16  issue, and therefore need not consider the arbitration demand submitted in support of

17  Trustees' opposition.  Nevertheless, for purposes of briefing of any future motions, the

18  parties are informed that the Court may consider documents such as the Commercials

19  Contract attached to or referred to in the Complaint or proposed complaint, where their

20  authenticity is unquestioned.  *See Stone*, 101 F.3d at 1313–14 (explaining that in ruling on

21  a motion under Rule 12(b)(6), a court may consider documents attached to or referred to in

22  the complaint); *Redwood Christian Schools v. County of Alameda*, 2007 WL 164743, slip op.

23  at *1 (N.D.Cal., Jan. 19, 2007) (explaining that in analyzing whether amendment would be

24  futile, a court applies the same standards as for a Rule 12(b)(6) motion) (citation omitted).

25      In addition, the proposed sixth and seventh claims seek declaratory relief, not

26  restitution (which is sought in the Complaint's seventh claim and the proposed complaint's

27  eighth claim).  Plaintiffs' proposed sixth and seventh claims do not show Plaintiffs have

28  standing to sue for declaratory relief under ERISA.  Furthermore, it is open to question

07cv0373

whether an employer can sue for declaratory relief under these circumstances.  *See Tab*
*Contractors*, 224 F. Supp.2d at 1284 ("[T]his Court will not infer from ERISA nor [Ninth
Circuit precedent] that an employer has standing to sue for declaratory relief under ERISA.")
(citing *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204 (2002)).[2]  Plaintiffs have
not addressed this and shown standing as required.

Because it appears permitting Plaintiffs to amend the Complaint to add these two
claims would be futile, the request to add these claims will be denied. Plaintiffs may,
however, withdraw what is now their fifth claim, which they have omitted from the proposed
amended complaint.

## IV.    Conclusion and Order

Plaintiffs, apparently anticipating that the available information might be insufficient,
request the Court to postpone ruling on the MJP until discovery can be taken.  (Opp'n to MJP
at 17:1–9.)   As noted, Trustees request a stay of proceedings altogether.   The Court
considers it appropriate to rule on the pleadings as submitted.   The Motion to Stay is
**DENIED**.

Because a question of material fact is presented, the MJP is **DENIED WITHOUT**
**PREJUDICE.**  If the parties seek reconsideration in light of the Ninth Circuit's decision in
*Trustees of the Screen Actors Guild-Producers Pension and Health Plans v. NYCA, Inc.*,
Case no. 07cv56867, they are directed to comply with ¶ 4(j) of the Court's standing order.
If additional evidence or information is uncovered during discovery, making clear Plaintiffs
cannot prevail on their first claim for relief, summary judgment would be available for that
reason.

/ / /

/ / /

/ / /

_____

[2] The parties have not briefed the issue of an employer's (or alleged employer's)
standing to seek declaratory relief to Plaintiffs under ERISA, so the court will not examine
other claims for declaratory relief at this time.  The parties requested to brief this issue as
appropriate in connection with any future motions, in order to assist the Court in examining
its own jurisdiction.

07cv0373

1    Plaintiffs' Motion to Amend is **GRANTED IN PART AND DENIED IN PART**.  Plaintiffs'

2  request for leave to file an amended complaint is **DENIED**.   To the extent they seek to

3  withdraw their  fifth claim for declaratory judgment that Plaintiffs are not fiduciaries and

4  breached no duty under ERISA, however, they may do so by filing a notice so stating.

5

6    **IT IS SO ORDERED**.

7  DATED:  March 26, 2008

8

9                                          **HONORABLE LARRY ALAN BURNS**
                                           United States District Judge

10

- 16 -                                                                07cv0373