UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALLAWAY GOLF COMPANY, et al., | ) Civil No. 07-0373-LAB(LSP) |
| Plaintiffs, | ) |
| v. | ) ORDER GRANTING IN PART AND<br>) DENYING IN PART PLAINTIFFS'<br>) MOTION TO COMPEL PRODUCTION OF |
| SCREEN ACTORS GUILD, et al., | ) DOCUMENTS (Doc. #84) |
| Defendants. | ) ORDER FOR *IN CAMERA* REVIEW |

On November 7, 2008, Plaintiffs filed a Motion to Compel Production of Documents. On November 21, 2008, Defendants filed an Opposition to Plaintiffs' Motion. On November 26, 2008, Plaintiffs filed a Reply to Defendants' Opposition. On December 5, 2008, the Court held a hearing on Plaintiffs' Motion. The Court, having reviewed the Motion, Opposition and Reply papers and having heard oral argument on the Motion, HEREBY GRANTS in part and DENIES in part Plaintiff's Motion and ORDERS an *in camera* review of many of the disputed documents in issue.

\\

1. <u>Nigro Karlin Documents</u>[1]

Plaintiffs served on Defendants several Requests for Production of Documents seeking all communications between Defendants and their independent auditor Nigro, Karlin, Segal & Fieldstone (hereafter "NK"). Defendants refused to produce any of the requested documents between them and their attorneys and NK, contending that such documents reflect communications that are protected by either the attorney-client privilege or work product doctrine.

Plaintiffs argue that the communications between Defendants, their attorneys and NK are not protected by the attorney-client privilege or work product doctrine.

a. <u>Attorney-Client Privilege</u>

Plaintiffs contend that the NK documents are not protected by the attorney-client privilege because NK is not a client of Defendants' attorneys. Rather, NK is a third party to this action whose only role is that of a percipient witness. Moreover, NK does not work for Defendants' attorneys. In fact, NK confirmed that it is the independent accounting firm engaged by Defendants to perform periodic examinations of signatories to the Commercials Contracts. It performs work for Defendants, not Defendants' attorneys.

Defendants contend that NK, through its employee accountant Brian Meath (hereafter "Meath") has played an integral role as part of their litigation team in this case. Meath has provided information to Defendants' attorneys to facilitate Defendants' attorneys

---

[1] The documents at issue are listed on Defendants' Privilege Log as Document nos. 17-19, 23, 27, 29-33, 34, 35-37, 40-44, 48, 49, 51, 53, 55, 57, 58, 60, 63-69, 72-83, 85, 86,88, 89, 92, 93, 94, 96, 99, 101, 104, 106, 115, 130, 134, 136, 139, 153. 155, 158, 163-168, 172, 185, 186, 190, 191, 199, 200, 205, 207, 208, 236, 237-241.

representation of Defendants in this action.  Defendants cite <u>U.S. v. Hovel</u> to support their position.

In <u>Hovel</u>, the court stated in pertinent part:

> ...(T)he presence of an accountant, whether hired by a lawyer or by the client, while the client is relating a complicated tax story to the lawyer or by the client, ought not to destroy the (attorney-client) privilege... the presence of the accountant is necessary, or at least highly useful, for the effective consultation between the client and lawyer which the privilege is designed to permit...
>
> What is vital to the privilege is that the communication be made in confidence for the purpose of seeking legal advice from the lawyer.  If what is sought is not legal advice but only accounting service... or if the advice sought is the accountant's rather than the lawyer's, no privilege exists.  We recognize this draws what may seem to some a rather arbitrary line between a case where the client communicates first to his own accountant (no privilege as to such communications, even though he later consults his lawyer on the same manner), and others where the client in the first instance retains an accountant as a listening post, or consults the lawyer with his own accountant present... but the distinction has to be made if the privilege is neither to be unduly expanded nor to become a trap.

<u>Hovel</u>, <u>supra</u> at 922-923 (citations omitted)

Here, NK is clearly not a client of Defendants' attorneys nor was it hired by Defendants' attorneys to assist them in giving legal advice to Defendants.  Rather, NK was hired by Defendants to perform periodic examinations of signatories to the Commercial Contract, note the base compensation for each and determine, based on pension and health contributions reported by the signatory, what percentage of the base compensation is allotted to TV commercials. Further, NK provided Defendants with business-related advice in that Defendants have used NK's services for several years to audit various signatories.  Communications regarding business-related advice, rather than for legal advice, are not protected by the attorney-client privilege.  Therefore, the Court concludes that the NK docs are not

protected by the attorney-client privilege.

   b. <u>Work Product</u>

Plaintiffs argue that the NK documents are not protected by the work product doctrine. Defendants do not address the applicability of the work product doctrine to the NK documents.

On January 17, 2003, Defendants announced the audit of Plaintiffs. The audit period was to cover January 1, 1999 to December 31, 2002. Defendants granted Meath the authority to contact Plaintiffs to obtain the necessary records for a complete review of the audit period. Thereafter, Meath engaged in a series of communications with Plaintiffs in which he sought the documentation he needed to perform the audit. Plaintiffs sent Meath some documentation. In late 2003, Meath determined that he could not perform a complete audit because he had not received all the documentation he needed from Plaintiffs.

On February 3, 2004, Defendants' attorneys sought from Plaintiffs the documentation Meath needed to perform the audit. In late June 2004, Plaintiffs and Defendants entered into a confidentiality agreement. From September to November 2004, the parties negotiated a tolling agreement to prevent the filing of the current suit. Communications between Plaintiffs and Defendants regarding the needed documentation continued through September 2005. (Declaration of Brian Meath in Support of Counter-Claimants' Motion to Compel Production of Documents, November 1, 2007)

Meath testified at his deposition that prior to 2005, when Defendants would ask for his services, he would summarize the Commercials Contract, summarize the base compensation in the Contract and the contributions that were paid. If he was requested

1  to do so he would, and sometime in 2005 he began to, prepare a
2  calculation of what guideline applied and what additional contribu-
3  tions would need to be made to meet a potential shortfall, based on
4  his review of the Contract. If allocations required to be made for
5  covered versus noncovered services, he would refer the matter to
6  Defendants' Allocation Subcommittee for it to determine whether
7  there was a basis for accepting a different allocation. (Deposition
8  of Brian Meath, May 28, 2008, at 14, 17)
9      Federal Rule of Civil Procedure 26(b)(3) states in pertinent
10 part:
11     ...(A) party may not discover documents... that are prepared
12 in *anticipation of litigation* or for trial by or for another party
13 or its representatives. (emphasis added)
14     Here, the activities of Defendants, Defendants' attorneys and
15 Meath make it apparent that some time in 2004 or 2005, Meath's work
16 changed from performing audits and other business-related services,
17 as requested by Defendants, to performing some type of work to
18 assist Defendants' attorneys.  However, from the papers filed by
19 Plaintiffs and Defendants, the Court cannot precisely determine if,
20 and at what point in time, the nature of Meath's work changed or
21 whether the work Meath did was done in anticipation of litigation.
22 At a certain point in time, the activities of Defendants, Defen-
23 dants' counsel and Meath may have shifted Meath's work from that of
24 a business nature to work to assist Defendants' attorneys in
25 providing legal advice to Defendants in anticipation of litigation.
26 See St. James Stevedoring Co. V. Femco Machine Co. 173 F.R.D. 431,
27 433 (E.D. La. 1997)
28     Therefore, on or before January 20, 2009, Defendants shall

produce to the Court the documents listed in footnote 1 for *in camera* review so that the Court can determine from the documents the nature of Meath's work and if and when the nature of Meath's work changed from performing business activities for Defendants to performing work to assist Defendants' attorneys in providing legal advice to Defendants in anticipation of litigation.

2. <u>Allocation Subcommittee Meeting Minutes</u>[2]

Plaintiffs contend that Defendants have long had a Collections Committee to address issues of unpaid or underpaid contributions and a separate Allocations Subcommittee to address what portion of multi-service endorsement agreements should be allocated to performing in TV commercials. Plaintiffs assert that the minutes of the meetings of the Allocation Subcommittee are relevant to this action. Therefore, they should be entitled to discovery of those documents.

Defendants contend they have withheld from production these documents because their attorneys were present at all of the meetings of the Allocation Subcommittee. Therefore, everything discussed at those meetings and the minutes summarizing the meetings are protected from discovery by the attorney-client privilege and work product.

An attorney's attendance at a meeting held for a business purpose does not render privileged the communications made at such meetings. For communications at such meetings to be privileged, they must relate to acquisition or rendition of legal services. The

---

[2] The documents at issue here are listed on Defendants' Privilege Log as Document. nos. 121-129, 227, 229.

mere fact that clients were at a meeting with counsel in which legal advice was requested or received does not mean that everything said at the meeting is privileged. <u>Neuder v. Battelle Pacific Northwest</u> 194 F.R.D. 289 (D.C. D.C. 2000)

Here, from Plaintiffs' and Defendants' papers, the Court cannot precisely determine whether the documents at issue are protected from disclosure. Therefore, on or before <u>January 20, 2009</u>, Defendants shall submit the documents listed in footnote 2 to the Court for *in camera* review.

3. <u>Defendant's Failure to Comply With Expert Witness Subpoenas</u>

Defendants designated Jon Albert, John McGuire and John McGuinn as expert witnesses. On July 25, 2008, Plaintiffs issued subpoenas to Defendants for the expert witnesses' production of documents and appearance at depositions. As to each subpoena, Plaintiffs requested that the following documents be brought to the depositions:

a. Experts' files pertaining to this lawsuit, including any and all documents reviewed or considered in connection with the preparation of their testimony, all draft reports, and all analyses and notes made by them in preparation of their opinions and testimony;

b. All documents provided to the experts in connection with their services in this matter, from any source;

c. All documents related to experts' retention by Defendants, including retention agreements, time records and invoices;

d. All communications between the experts and Defendants or their counsel related to this case or to the subject of their

1 testimony; and

2     e. All prior expert reports and transcripts of prior
3 deposition and trial testimony.

4     The subpoenas had a production date of August 11, 2008, one
5 week prior to the first expert witness deposition. Defendants
6 produced thousands of documents and written responses to the
7 subpoenas. However, the produced documents were not segregated to
8 indicate which expert witness reviewed a particular document.
9 Therefore, Plaintiffs cannot determine if all of the documents
10 requested in the subpoenas were produced.

11     Plaintiffs argue that they are entitled to production of all
12 of the documents listed above. Plaintiffs further argue that
13 Defendants are required to segregate the documents to indicate which
14 expert witness reviewed a particular document.

15     Defendants argue that their expert witnesses did not perform
16 any independent work, research, studies or analyses, have no
17 "expert" files and relied upon their own knowledge and expertise in
18 proffering their opinions. Further, Defendants argue that none of
19 the documents produced in this case have been segregated according
20 to Responses to Requests for Production of Documents.

21     The Court determines that Plaintiffs are entitled to the
22 production of every document that is responsive to (a) through (e)
23 above. Therefore, on or before <u>January 20, 2009</u>, Defendants shall
24 produce all documents responsive to (a) through (e) above. The
25 documents shall be segregated and shall indicate for which request
26 the documents are responsive and for which expert witness the
27 documents pertain.

28

4. <u>Defendants' Failure to Comply With Prior Discovery Orders</u>

On May 19, 2008, the Court ordered Defendants to produce documents in response to specific discovery requests. Plaintiffs contend that while Defendants produced some documents as ordered, they did not produce all documents responsive to Requests for Production of Documents nos. 9, 14 and 19. Defendants assert that they have produced all documents responsive to those requests.

    a. <u>Request #9</u>

Request #9 requests production of all documents concerning any determination by any Defendant as to what portion of a multi-service contract for a celebrity or athlete endorser of products or services who appeared in any commercial, or who, pursuant to their endorsement contract, could have been required to appear in a commercial but did not, should be allocated to commercials produced and shot in the United States.

Defendants argue that the requested documents are not relevant to this litigation because the District Judge in this case has ruled that the application of the guidelines Defendants have used is not an adequate defense in this case. Further, Defendants argue that they have produced to Plaintiffs thousands of documents relating to numerous unrelated audits, contracts and Settlement Agreements concerning claims litigated over the past ten years.

Plaintiffs argue that the date range for the documents requested has never been established, so they are unsure whether they have received all responsive documents.

The Court determines that to the extent Defendants have not done so, on or before <u>January 20, 2009</u>, Defendants shall produce all documents responsive to the request dated from January 1, 1999

through October 2007. The documents to be produced shall include not only the documents reflecting the ultimate determination, but all the documents reflecting negotiations that led to the ultimate determination. Further Defendants shall serve on Plaintiffs a formal response that all documents responsive to the request have been produced.

     b. Request #14

Request #14 requests all documents concerning settlements entered into by any Defendant with any person or entity concerning the amount of contributions to Defendants on behalf of any celebrity or athlete endorser for the following entities: (i) Nike; (ii) Bearing Point; and (iii) Titleist/Foot Joy.

Plaintiffs contend that Defendants produced thousands of documents, but the documents produced are not responsive to the request. Defendants contend that it has produced to Plaintiffs all documents responsive to the requests with respect to Nike and Titleist/Foot Joy. Defendant also produced the settlement agreement with respect to Bearing Point.

The Court determines that to the extent Defendants have not done so, on or before January 20, 2009, Defendants shall produce all documents responsive to the request. The documents to be produced shall include not only the documents reflecting the ultimate determination, but all the documents reflecting negotiations that led to the ultimate determination. Further Defendants shall serve on Plaintiffs a formal response that all documents responsive to the request have been produced.

     c. Request #19

Request #19 requests all documents concerning how Defendants

actually calculated the contributions to them from producers of motion pictures, television shows and commercials regarding multi-service contracts. At the hearing on the Motion, Defendants' counsel stated to the Court that Defendants will provide a formal response to Plaintiffs' request stating that all documents responsive to the request have been produced after a reasonable and diligent search. To the extent that the formal response has not been served on Plaintiffs, it shall be served no later than <u>January 20, 2009</u>.

Plaintiff's Motion is GRANTED in part and DENIED in part. IT IS SO ORDERED.

DATED: January 12, 2009

_____
Hon. Leo S. Papas
U.S. Magistrate Judge