# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALLAWAY GOLF COMPANY and DAILEY & ASSOCIATES,<br><br>                       Plaintiff,<br>vs.<br><br>SCREEN ACTORS GUILD, INC., TRUSTEES OF THE SCREEN ACTORS GUILD - PRODUCTIONS PENSION PLAN AND TRUSTEES OF THE SCREEN ACTORS GUILD – PRODUCERS HEALTH PLAN,<br><br>                       Defendants. | CASE NO. 07CV0373-LAB (WMc)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>[Dkt. no. 79] |

In its order issued March 27, 2008, the Court observed the parties had not briefed the issue of an employer's or alleged employer's standing to seek declaratory relief under the Employee Retirement Income Security Act (ERISA). (Order of March 27, 2008 at 15 n.2.) The Court therefore requested they do so in connection with any future motions in order to assist the Court in examining its own jurisdiction.

The order pointed out precedent suggesting Plaintiffs, who are alleged to be employers, lack standing to seek declaratory relief. *Trustees of Operating Engineers Pension Trust v. Tab Contractors*, 224 F. Supp.2d 1272, 1284 (D.Nev. 2002) ("[T]his Court will not infer from ERISA nor [Ninth Circuit precedent] that an employer has standing to sue for
- 1 -

declaratory relief under ERISA.") (citing *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204 (2002)).

In response to the Court's request, Defendants filed a Motion for Partial Summary Judgment (Dkt. no. 79) seeking dismissal of Plaintiffs' first cause of action in its entirety, and all other causes of action to the extent they are based on ERISA.

Plaintiffs' first cause of action is a request for a declaration that Plaintiffs cannot be required to make contributions on behalf of the Golf Professionals because the Golf Professionals are independent contractors. Defendants contend an ambiguity in interpretation of an agreement is resolved by resort to undisputed evidence and therefore, Plaintiffs' first cause of action must fail.

Defendants also argue Plaintiffs do not fall within any category of persons entitled to sue to enforce the provisions of ERISA, as set forth in ERISA § 502 (29 U.S.C. § 1132). They do not seek dismissal of Plaintiffs' claims to the extent those claims are based on the Labor Management Relations Act (LMRA).

Although in their Opposition to the Motion for Partial Summary Judgment Plaintiffs have discussed their anticipated defenses, these go to the merits of Plaintiffs' second through seventh causes of action, and questions of damages and ultimate liability, and do not address Plaintiffs' first cause of action or standing to sue. For their part, Plaintiffs filed no corresponding motion for summary judgment or for judgment on the pleadings. Their *ex parte* application for leave to do so was denied (*see* Order of Feb. 10, 2009), though they were not foreclosed for making an appropriate motion at trial.

Plaintiffs may also have provided this argument in the event the Court found they lacked standing to sue for declaratory relief based on ERISA. They may have intended this argument to demonstrate the extent to which their claims depended on other legal bases. As discussed below, however, the Court finds they have standing. The Court therefore has no occasion to consider these arguments at this time.

/ / /

/ / /

- 2 -

07cv0373

## I. Factual Background

The parties agree on several points, and the following facts, taken from the Complaint, are undisputed.

Defendants are trustees ("Trustees") of the Screen Actors Guild-Producers Pension Plan and Screen Actors Guild-Producers Health Plan (collectively, the "Plans"). Plaintiff Callaway Golf ("Callaway") entered into endorsement contracts (the "Endorsement Agreements") with certain professional golfers (the "Golf Professionals") to endorse Callaway's golf equipment. The Golf Professionals agreed to use Callaway's equipment, to wear Callaway's logo while playing in golf tournaments, to make personal appearances at events, and to promote Callaway's products in both print and broadcast media, including television commercials if requested. The Endorsement Agreements include a provision that the Golf Professionals are independent contractors. Trustees are not parties to the Endorsement Agreements.

Plaintiff Dailey & Associates ("Dailey") entered into agreements with Callaway for advertising services, and pursuant to these agreements, created television commercials. Dailey also entered into a contract directly with the Golf Professionals to appear in the television commercials. Neither Callaway nor Trustees are parties to this agreement.

SAG has entered into a collective bargaining agreement ("Commercials Contract") with certain advertising agencies, including Dailey. Both the Endorsement Agreements and the Commercials Contract refer to fees at the minimum SAG rate. The Commercials Contract was modified twice from its 1997 version, in 2000 and again in 2003. While Callaway was not a party to the Commercials Contract, Callaway reimbursed Dailey for payments made pursuant to the Commercials Contract, believing it was obligated to do so.

Plaintiffs' first claim is for declaratory relief that the Plaintiffs have no liability for contributions to the Plans because the Golf Professionals are independent contractors, and such contributions are prohibited under the LMRA and not required by ERISA.

/ / /
/ / /

## II. Legal Standards

Summary judgment is proper if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "A material issue of fact is one that affects the outcome of the litigation and requires a trial to resolve the parties' differing versions of the truth." *S.E.C. v. Seaboard Corp.*, 677 F.2d 1301, 1305-1306 (9th Cir. 1982).

The burden then shifts to the nonmoving party to establish, beyond the pleadings, that there is a genuine issue for trial. *Celotex*, 477 U.S. at 324. To successfully rebut a properly supported motion for summary judgment, the nonmoving party "must point to some facts in the record that demonstrate a genuine issue of material fact and, with all reasonable inference made in the plaintiffs' favor, could convince a reasonable jury to find for the plaintiffs." *Reese v. Jefferson School Dist. No. 14J*, 208 F.3d 736, 738 (9th Cir. 2000), citing Rule 56, *Celotex*, 477 U.S. at 323, and *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 249 (1986). "If reasonable minds could differ," the judgment should not be entered in favor of the moving party. *Anderson*, 477 U.S. at 250–51. However, summary judgment must be entered "if, under the governing law, there can be but one reasonable conclusion as to the verdict." *Id.*

Here, the Court is called on to interpret a written agreement. Determination of whether the provisions of a contract are "clear and unambiguous," and interpretation of provisions deemed "clear and unambiguous," are questions of law, allowing summary judgment. *See United Sates v. Sacramento Municipal Util. Dist.*, 652 F.2d 1341, 1343–44 (9th Cir. 1981). However, if the Court determines that the contractual language is unclear, summary judgment is inappropriate, because "differing views of the intent of the parties will raise genuine issues of material fact." *Id.* at 1344.

///
///

In interpreting the Commercials Contract, the Court applies federal common law, but may borrow from state law where appropriate. *Padfield v. AIG Life Ins. Co.*, 290 F.3d 1121, 1125 (9th Cir. 2002) (citations omitted).

### III. Request for Judicial Notice

Plaintiffs request judicial notice of proceedings in other courts, pursuant to Fed. R. Evid. 201. (Dkt. no. 89-3.) These proceedings, however, go to issues other than those under consideration here. While the Court may have occasion to take notice of and consider these proceedings at a later stage in the litigation, it has no occasion to do so now. This request is therefore **DENIED WITHOUT PREJUDICE AS MOOT**.

### IV. Discussion

#### A. Standing and Jurisdiction

As the parties seeking to invoke the Court's jurisdiction, Plaintiffs have the burden to show they have standing to pursue their claims. *Schmier v. U.S. Court of Appeals for the Ninth Circuit*, 279 F.3d 817, 821 (9th Cir. 2002).

Under 29 U.S.C. § 1132, generally only plan participants, beneficiaries, fiduciaries, or the Secretary of Labor may bring civil suits to enforce most of ERISA's provisions. *Independent Living Ctr. of S. Cal., Inc. v. Shewry*, 543 F.3d 1050, 1056 n.6 (9th Cir. 2008). *But see Associated Builders & Contractors v. Carpenters Vacation & Holiday Trust Fund*, 700 F.2d 1269, 1278 (9th Cir. 1983) (allowing suits by employers in narrow circumstances).

Plaintiffs rely on 29 U.S.C. § 1132(e), which provides for "exclusive jurisdiction of civil actions under this subchapter brought by the Secretary or by a participant, beneficiary, fiduciary, or any person referred to in section 1021(f)(1) of this title." Section 1021(f)(1), in turn, requires administrators of defined benefit plans to provide plan funding notice to plan participants and beneficiaries and labor organizations representing them, the Pension Benefit Guarantee Corporation, "and, in the case of a multiemployer plan, to each employer that has an obligation to contribute to the plan." Section 1021 pertains to disclosure and reporting requirements, such as the distribution of summary plan descriptions, the filing of reports, and notice of certain financial information.

The reason for inclusion of labor organizations and employers obligated to contribute to multiemployer plans in § 1132(e), however, appears to be the provisions in § 1132(a)(8) and (10) allowing employers (or, in § 1132(a)(10) employee organizations) to bring suit to require notices or disclosure or in some cases to compel the sponsor of a multiemployer plan to take measures to stabilize the plan's finances. The inclusion of employers and labor organizations does not imply they have standing to bring suits to enforce other rights under ERISA.

Plaintiffs argue Defendants, having alleged Plaintiffs are employers, are "estopped from arguing jurisdiction is lacking" under § 1132(e). (Pls.' Opp'n to Mot. for Partial Summ. J. ("Opp'n"), 21:6–7; 22:11–14.) Plaintiffs, however, misconstrue § 1132(e)'s jurisdictional provisions, which empower particular courts to hear particular kinds of claims, with the right to bring suit.

Plaintiffs also argue their "declaratory relief claims raise federal questions which Plaintiffs have standing to bring under federal question jurisdiction, and the Court has jurisdiction to entertain under the Declaratory Relief Act." (Opp'n, 21:7–10 (citing 28 U.S.C. §§ 1331, 2201); *see also id.* at 22:20–24 (averring standing under 28 U.S.C. § 1331).) They argue they have claims under federal common law and contend, citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 110 (1989) and *Menhorn v. Firestone Tire & Rubber Co.*, 738 F.2d 1496, 1499 (9th Cir. 1984) that courts have authority "to develop a 'federal common law of rights and obligations under ERISA-regulated plans.'" *Bruch*, 489 U.S. at 110. Their line of reasoning is largely summed up in *Fentron Indus., Inc. v. Nat'l Shopmen Pension Fund*, 674 F.2d 1300, 1305 (9th Cir. 1982) and its progeny, including *Award Service, Inc. v. N. Cal. Retail Clerks Unions & Food Employers Joint Pension Trust Fund*, 763 F.2d 1066, 1068 (9th Cir. 1985).

In *Fentron* and *Award Service*, an employer was permitted to bring suit to recover funds mistakenly contributed to an ERISA plan. The Ninth Circuit in those cases found the employers had an implied private right of action and had alleged "specific and personal injury" sufficient to allow them to bring suit under § 403 of ERISA (29 U.S.C. § 1103), which

permits the return of contributions made in error. This reasoning has since, however, been repudiated. *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1265 (9th Cir. 1992) ("The reasoning of *Fentron* has twice been repudiated by the United States Supreme Court.") Numerous courts have therefore concluded employers lack standing under ERISA. *See Chasan v. The Garrett Group*, 2007 WL 173927, slip op. at *4–*5 (S.D.Cal., Jan. 18, 2007) (reviewing precedents and concluding employers lack standing under 29 U.S.C. § 1132). *See also Tab Contractors*, 224 F. Supp. 2d at 1282–83 (holding that while the reasoning of *Fentron* and *Award Service* has been rejected, they are still good law to the extent they permit employers to sue for mistaken contributions under ERISA).

Plaintiffs do have a stronger argument, however. Citing *Transamerica Occidental Life Ins. Co. v. DiGregorio*, 811 F.2d 1249, 1253 (9th Cir. 1989), they contend even if they cannot sue under ERISA, they can do so under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 *et seq*. *Transamerica* does not hold the Declaratory Judgment Act provides an independent jurisdictional basis, *see Skelly Oil v. Phillips Petroleum Co.*, 339 U.S. 667, 671–72 (1950), but rather relied on the <u>defendant's</u> standing to sue under ERISA to reach the conclusion that the defendant could also sue for declaratory relief. ("[D]efendant's claim to double indemnity benefits is at the heart of this case, and ERISA would have permitted her to sue on this claim in federal court. Thus the district court without doubt had federal jurisdiction to hear [the plaintiff's] suit.") *TransAmerica* at 1253 (footnote omitted).

The plaintiff in *Transamerica* was a fiduciary insurance company suing to clarify the terms of its contract. 811 F.2d at 1252. The court noted that although participants and beneficiaries could sue to clarify their rights under a benefit plan, ERISA did not provide such a right of action for a fiduciary. *Id.* at 1252–53 (citing § 1132(a)(1)(B)). Nevertheless, because the defendant — a beneficiary — could have brought a coercive action under ERISA, the fiduciary insurance company could bring suit under the Declaratory Judgment Act. *Id.* at 1253. Here, Defendants are already bringing suit to enforce funding agreements, and have alleged that both Plaintiffs owe contributions. (Countercl., ¶ 25.) Under ERISA § 515 (29 U.S.C. § 1145), an employer must make required contributions to a multiemployer

plan, and the Court has jurisdiction under § 1132(e) and (g) to hear actions by fiduciaries (such as the Trustees) to enforce this provision. See § 1132(g) (governing actions by fiduciaries to enforce § 1145).

The U.S. District Court for the Southern District of Ohio has recently distinguished *Transamerica* and several other cases on the basis that, even if the plaintiffs (who were fiduciaries or participants) could not have brought a particular declaratory relief action under ERISA, they were still enumerated parties under § 1132(e). *The Painting Co. v. Dist. Council No. 9*, 2008 WL 4449262, slip op. at *10 (S.D.Ohio, Sept. 30, 2008) (citing *Transamerica*; *Great Lakes Steel, Div. of Nat'l Steel Corp. v. Deggendorf*, 716 F.2d 1101 (6th Cir. 1983); *Prudential Ins. Co. of Am. v. Doe*, 76 F.3d 206 (8th Cir. 1996); *Reynolds v. Stahr*, 758 F. Supp. 1276 (W.D.Wis, 1991); *BorgWarner Diversified Transmission Prods., Inc. v. United Automobile, Aerospace, Agricultural Implement Workers of America, Local No. 287*, 2006 WL 1328723 (S.D.Ind. 2006)). The court therefore held an employer lacked standing to bring an action for declaratory relief under ERISA.

*Painting Co.*, however, relied on distinctions not found relevant in any of these cases except *Great Lakes Steel*. In none of these cases did ERISA permit the plaintiffs to bring an action under the provision at issue. Most of the cases held that although ERISA did not permit an action, the Declaratory Relief Act authorized actions provided a defendant could have asserted a claim in federal court. *Transamerica*, 811 F.2d at 1253 (citing *Janakes v. U.S. Postal Serv.*, 768 F.2d 1091, 1093 (9th Cir. 1985) ("If . . . the declaratory judgment defendant could have brought a coercive action in federal court to enforce its rights, then we have jurisdiction . . . ."); *Prudential*, 76 F.3d at 210; *Reynolds*, 758 F. Supp. at 1281, *BorgWarner*, 2006 WL 1328723, slip op. at *4. In no case except *Great Lakes Steel* did the plaintiff's status as an enumerated party under § 1132(e) form part of the courts' analysis.

Furthermore, these courts held jurisdiction was available via the Declaratory Judgment Act (and thus, implicitly, under 28 U.S.C. § 1331) because of the existence of a federal question (*i.e.*, interpretation of certain provisions of ERISA). Of course, neither the

///

Declaratory Judgment Act nor 28 U.S.C. § 1331 incorporates the requirements of 29 U.S.C. § 1132.

The only case that clearly supported *Painting Co.*'s position, *Great Lakes Steel*, held an employer *qua* employer could not seek a declaratory judgment of its responsibilities to provide benefits pursuant to an ERISA plan, but the same employer *qua* fiduciary could do so. The court cited the Declaratory Judgment Act but did not rely on it in any fashion to find jurisdiction.

*Transamerica* apparently remains good law on this point. *See, e.g., Standard Ins. Co. v. Saklad*, 127 F.3d 1179, 1181 (9th Cir. 1997) (citing *Transamerica* for the proposition that, even where a fiduciary could not bring a claim under § 1132, it could seek declaratory relief if the defendant could have brought a coercive action in federal court to assert its rights). Unlike the district court deciding *Painting Co.*, which was bound by *Great Lakes Steel*, this Court is bound by *Transamerica*.[1]

Because the Court would have jurisdiction over a suit brought by Defendants under ERISA §§ 502 and 515 to require contributions under the applicable agreements, the Court likewise has jurisdiction by way of the Declaratory Judgment Act and 28 U.S.C. § 1331 to declare Plaintiffs' obligations under those same agreements.

### B.   Plaintiffs' First Cause of Action

Having found jurisdiction over Plaintiffs' claims, the Court now turns to the question of whether Plaintiffs' first cause of action should be dismissed.

Plaintiffs argue certain agreements require contributions to the Plans on behalf of independent contractors or ineligible employees, in violation of LMRA § 302 (29 U.S.C. § 186) and consequently in violation of ERISA § 515, which prohibits contributions inconsistent with law. Under LMRA § 302, an employer may not generally make contributions to a labor union, but may do so for the benefit of employees to a pension or

---

[1] *Tab Contractors* was decided by the U.S. District Court for the District of Nevada, which is also bound by *Transamerica* and other Ninth Circuit holdings. It appears, however, the cross-claimant employer did not cite *Transamerica*, and ultimately the court concluded the cross-claimant had not shown the court had jurisdiction.

benefits plan. Contributions may be made only for the benefit of true employees and not for the benefit of independent contractors, no matter how contractual language describes them. *Todd v. Benal Concrete Const. Co., Inc.*, 710 F.2d 581, 584 (9th Cir. 1983).

Plaintiffs argued they could not be required to make contributions on behalf of the Golf Professionals who, they maintained, are independent contractors. Defendants, in turn, argued the issue was moot because whether the Golf Professionals are employees or independent contractors does not affect Plaintiffs' responsibility to contribute to the Plans. (Mot. for Judgment on the Pleadings, 1:17–2:15.) In its order of March 27, 2008, the Court determined the employment status of the Golf Professionals was irrelevant provided their compensation was merely a means of measuring contributions owed, and contributions were not being made for their benefit or on their behalf. (Order of March 27, 2008, 5:1–6:2.)

In their Motion for Partial Summary Judgment, Defendants take pains to distinguish "for the benefit of" from "on behalf of," (Mot. for Partial Summ. J., 7:12–24), but the distinction is not particularly meaningful in this context. Essentially they are distinguishing between defined benefit plans (which include the Plans) and defined contribution plans. In the case of defined benefit plans, contributions are made by or on behalf of participants, plan assets are pooled, and benefits are paid using some formula set forth in plan documents. Though there is no direct relationship between the amount paid on behalf of individual participants and the amount they receive, the contributions are made in order to provide benefits to participants as a group. *Hughes Aircraft Co. v. Johnson*, 525 U.S. 432, 439–40 (1999).

To comply with ERISA, even apart from the LMRA or this lawsuit, the Plans can accept contributions only for the benefit of eligible beneficiaries, meaning only eligible beneficiaries will actually receive benefits paid out of the Plans' pooled assets. If the Plans permit others who are not eligible to participate and receive benefits, which in this case would mean independent contractors, contributions are not entirely being made on behalf of eligible employees.

///

- 10 -

07cv0373

The real dispute is whether the Commercials Contract purports to require contributions for the purpose of providing benefits to performers without regard to their eligibility, because both the LMRA and ERISA would prohibit such contributions. As the Court explained in its Order of March 27, 2008:

> The heart of their disagreement is whether Dailey was contractually obligated to make contributions to the Plans on behalf of the Golf Professionals, or whether the contributions the Commercials Contract obligated Dailey to make were measured in part by the Golf Professionals' compensation. This is a matter of contract construction.

Order at 7:22–26.

The Court previously denied Defendants' motion for judgment on the pleadings, citing an apparent ambiguity. (Order of March 27, 2008, 10:9–11:20.) Most of the Commercials Contract showed contributions based on principal performers' compensation were due regardless of the performers' status as employees or independent contractors. (*Id.*, 9:17–10:8.) The Court pointed out language in the Commercials Contract apparently suggesting performers who contract directly or through loan-out companies were necessarily eligible participants. (*Id.*, 10:21–25 (citing sections 45(F)(4) and (5) of the 1997 Commercials Contract and 46(E)(4) and (5) of the 2000 and 2003 Commercials Contract).) The Court noted the possibility the ambiguity resulted from loose drafting or the parties' failure to point to explanatory provisions elsewhere in the Commercials Contract, and other contractual provisions or extrinsic evidence would clarify it. (*Id.*, 11:9–12.)

In their Motion for Partial Summary Judgment, Defendants point to section 46(G) of the 2000 Commercials Contract.[2] Although the Court briefly reviewed this section for a related purpose (Order of March 27, 2008 at 9:21–25), it was not the subject of briefing. This language is relevant, because the Court interprets each part with reference to the entire contract. *Tanadgusix Corp. v. Huber*, 404 F.3d 1201, 1205 (9th Cir. 2005).

This section explains the use to which contributions are to be put, and provides they are to be held in trust for the benefit of employees covered by the Screen Actors Guild's

---

[2] Defendants refer only to the 2000 Commercials Contract. The 1997 and 2003 Commercial Contracts, however, contain identical provisions, at sections 45(H) and 46(G), respectively.

- 11 -

collective bargaining contracts who are eligible for benefits under the Plans. The Plans' trust agreements are incorporated by reference. The same section also requires Trustees to determine eligibility, and makes clear the amount of benefits provided will be based on their application of eligibility rules.

Defendants argue the term "on behalf of" in sections 45(F)(4) and (5) of the 1997 Commercials Contract and 46(E)(4) and (5) of the 2000 and 2003 Commercials Contract more accurately means "in connection with." (Mot. for Partial Summ. J., 7:25–27.) Defendants' discussion of this section helps clarify that the Commercials Contract does not contemplate prohibited contributions, and that regardless of how they are calculated, contributions "on behalf of" the Golf Professionals are actually made only for the benefit of eligible employees and no one else.

Defendants also present the declaration of Bruce Dow, the Plans' Chief Executive Officer and primary administrator since 1989. He explains the actual administration of the Plans, how contributions are used, and how benefits are paid. He also declares "on behalf of principal performers," as commonly used in the industry and as carried out in practice by the Plans' administrators, refers to all principal performers as a group. (Dow Decl. §§ 10, 11.)

Plaintiffs offer no evidence of their own on these points, but instead contend Dow is not competent to testify to the meaning of contractual language (Opp'n, 19:2–3), and his subjective understanding of the contracts is not dispositive. (*Id.*, 19:25–20:2.) The Court agrees on both counts.

Contractual construction is a question of law for the Court. *Sacramento Municipal*, 652 F.2d at 1343–44. And Dow's own subjective interpretation of the Commercials Contract would not be relevant to show what the agreement's language actually meant. *See Williams v. Metzler*, 132 F.3d 937, 947 (3d Cir. 1997) (explaining that inquiry into the meaning of contractual language "does not require a search for the subjective intent of the parties").

As administrator and CEO of the Plans since 1989, however, Dow would obviously know how the Plans were administered, and would have had an opportunity to learn the meaning of terms in use within his industry. His testimony regarding these facts is therefore

competent. *See E.E.O.C. v. Federal Express* Corp., 268 F. Supp. 2d 192, 205 (holding that when a court applying federal common law examines contract provisions for ambiguity, the court should consider the "customs, practices, usages and terminology as generally understood in the trade or business") (citation omitted); *United States v. Erickson*, 75 F.3d 470, 476 (9th Cir. 1996) (affirming district court's admission of testimony by lay witnesses regarding industry practices and the common understanding of terms in use in their industry). Plaintiffs' objections to these portions of the declaration (Dkt. no. 89-2) are therefore **OVERRULED** and its objections to other portions of the declaration are moot.

Plaintiffs also point out Defendants present no evidence to show the intent of the drafters of the Commercials Contract. While true, this makes no difference because to the extent the Commercials Contract is clear and unambiguous, its language is controlling. *Tanadgusix*, 404 F.3d at 1205 ("The terms of the contract control, regardless of the parties' subjective intentions shown by extrinsic evidence.")

In view of Defendants' briefing of section 46(G) and Dow's declaration regarding industry usage, and bearing in mind the manner in which the Plans are administered, the Court finds the apparent ambiguity has been resolved, and the Commercials Contract requires payments as measured by principal performers' compensation rather than for the benefit of all principal performers. Therefore, regardless of whether Golf Professionals are eligible employees or are not employees at all, contributions measured by their compensation are therefore not made for their benefit. Even if they prove to be independent contractors, contributions will not be affected. The language of the Commercials Contract shows this, and Dow's declaration provides unrebutted evidence this is actually how the Plans are operated.

## V. Conclusion and Order

For the reasons set forth above, Defendants' Motion for Partial Summary Judgment is **GRANTED IN PART** and **DENIED IN PART**. The request to dismiss Plaintiffs' second through seventh claims to the extent they are based on ERISA is **DENIED**. The request for
///

summary judgment on Plaintiffs' first cause of action is **GRANTED** and Plaintiffs' first cause of action is **DISMISSED WITH PREJUDICE**.

**IT IS SO ORDERED.**

DATED: 3-30-09

**HONORABLE LARRY ALAN BURNS**
United States District Judge