# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALLAWAY GOLF COMPANY and DAILEY & ASSOCIATES,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>SCREEN ACTORS GUILD, INC., TRUSTEES OF THE SCREEN ACTORS GUILD - PRODUCTIONS PENSION PLAN AND TRUSTEES OF THE SCREEN ACTORS GUILD – PRODUCERS HEALTH PLAN,<br><br>　　　　Defendants. | CASE NO. 07CV0373-LAB (WMc)<br><br>**ORDER RE: ADMISSIBILITY OF EXPERT TESTIMONY; AND**<br><br>**ORDER RE: TRIAL** |

On May 30, 2008, Defendants designated two witnesses, John McGuire and Jon Albert, as experts. The notice of designation indicated Albert was to testify regarding the value of television advertising and other services performed by athletes, while McGuire was to testify concerning "[s]ervices covered by the SAG Commercials Contract, intent and application of § 46 of the 200 Commercials contract and related provisions." Defendants later designated John McGuinn as an expert witness to offer testimony on the same subjects as McGuire in rebuttal of Plaintiffs' evidence. (*See* Motion to Exclude Expert Testimony (the "Motion"), Docket no. 109-2 at 9–10 (Notice of Designation).)

/ / /

/ / /

Plaintiffs then filed the Motion seeking to exclude the expert testimony of all three witnesses. Because the claims had not yet been narrowed by summary judgment, the Court took the motion under advisement until nearer the trial date.

The Motion argues the expert testimony must be excluded under both Fed. R. Civ. P. 26, and because it is inadmissible under Fed. R. Evid. 702. In the case of testimony by McGuinn and McGuire, the Court need not reach the Rule 26 objection, because it finds these two witnesses' expert testimony would not be helpful to the Court.

The principal issue to be determined at trial is the amount of certain golf professionals' compensation is attributable to television commercials. To make this determination, the parties should present evidence shedding light on the meaning of the terms used in the agreements.

McGuire is senior advisor to the Screen Actors Guild ("SAG") and has a good deal of experience with SAG's business matters, including the collective bargaining agreement and the governance of the two plans at issue here. McGuinn has experience negotiating with SAG. To the extent McGuinn and McGuire would testify as experts, their proffered testimony would explain the meaning of agreements themselves. (Motion, Exs. 3 and 5 (expert reports).) The meaning of agreements, however, is a question of law for the Court. *Santa Monica Culinary Welfare Fund v. Miramar Hotel Corp.*, 920 F.2d 1491, 1493 (9th Cir. 1990); *see also Marx & Co., Inc. v. Diner's Club Inc.*, 550 F.2d 505, 509–10 (2d Cir. 1977) (holding that while expert testimony regarding business practices would have been proper, testimony regarding the meaning to be given to contractual terms was inadmissible). This is not to say McGuire and McGuinn cannot testify at all, since it appears they have a good deal of relevant personal knowledge that could shed light on the meaning of the contractual terms. Rather, if they testify, it must be as percipient witnesses rather than experts.

Jon Albert, who also goes by Jon Albert-Levy, worked in the field of celebrity endorsements and advertising for over 30 years. The description of his work and experience in his expert report shows him to be qualified to testify as an expert concerning celebrity endorsement agreements and related business practices. (Motion, Ex. 7, Appendix.) The

proffered testimony, based on his experience, covers a number of topics, including notably the value of celebrity endorsements and the amount of money celebrities can demand for television commercial work.

Plaintiffs object to Albert's expert report, arguing it does not list all his publications and cases in which he has testified as an expert for the past four years. Albert has disclosed high-profile cases he testified in, going back approximately 20 years, and mentions without giving dates that he testified in other lower-profile cases as well. Defendants represent that the list is complete. Normally the list of cases should include more detail, *see, e.g., Coleman v. Dydula*, 190 F.R.D. 316, 318 (W.D.N.Y. 1999), but the cases are listed with enough specificity that they are identifiable and the Court finds the omission harmless. Plaintiffs have pointed to no indication Albert testified as an expert in a case in the past four years that he has not disclosed as required under Rule 26(a)(2)(B)(v).

Plaintiffs also object that Albert has not included a list of all publications he authored in the past ten years as required under Rule 26(a)(2)(B)(iv). In their opposition to the Motion, Defendants avoid the question of whether he authored any publications, stating "a quick internet, Westlaw or Lexis search could resolve the inquiry for Plaintiffs."[1] (Opposition to Motion, 15:22–24.) In view of the nature of Albert's expertise and proffered testimony, which is based primarily on his business experience, there is no great likelihood he has authored particularly relevant publications in the past ten years that would form a part of his qualifications. Plaintiffs did not inquire about it when they deposed Albert. Because Albert has testified as an expert recently, it is likely he has a list of publications prepared. But if not, Defendants represent his publications are easily located online. The Court will therefore order production of this list, which appears likely to remedy the omission with no undue prejudice to Plaintiffs. In view of the nature of the few publications located per Defendants'

---

[1] A Westlaw search in the "allnews" and "Advertising & Marketing Services Industry News" databases returned no relevant results for "jon /3 albert and au(albert)" or "jon /3 'albert-levy'." Google searches for "jon albert-levy" and "jon albert" returned brief and informal columns in *Brandweek*, *Adweek*, and *Adlaw* published after the report was prepared, as well as some subscription training materials about negotiation of endorsement contracts.

suggestions, it appears they will be largely irrelevant to his qualifications and the omission will be harmless.

Plaintiffs point out Albert's experience does not primarily concern athletes, although his curriculum vitae does indicate his work with athletes is still substantial. The transcript of Albert's deposition demonstrates he does not primarily concern himself with the details of the fields in which celebrities work — whether actors, musicians, or athletes — because, he says, the contracts concerning their endorsements are substantially similar. Bearing in mind his extensive experience, Albert would be in a position to know what information he or another person in his field would base opinions on. At this point, therefore, the Court conditionally accepts his representations that an expert in the area of celebrity endorsements would not need to obtain any particular expertise about the sport of golf as opposed to other sports or other fields of endeavor to be able to place a value on a golfer's endorsement and television commercial work.

Plaintiffs also object to several particular conclusions Albert offers, including his opinion that "[c]elebrities do not appear in television commercials for [union] 'scale'" as lacking in factual basis. This conclusion, however, is obviously based on his experience and observation of the endorsement and television commercial business. Plaintiffs also find fault with his analysis and conclusions as being too broad or nonspecific. These objections, however, go more to the weight of Albert's testimony and the credibility of his opinions than to their admissibility. While it is possible his testimony might stray into insufficiently grounded speculation, such weaknesses are more appropriately raised by objection at trial, or addressed in argument.

Because this trial will be to the Court, without a jury, there is no danger jurors will be swayed by improper expert opinion or unable to set it aside if it is later determined to be inadmissible. *See Alioto v. Cowles Communications, Inc.*, 623 F.2d 616, 620 (9th Cir. 1980) (holding that, "while a trial judge sitting without a jury must base his verdict on competent evidence, he has broad discretion to receive evidence that might be inadmissible in a jury trial," as long as the judge does not rely on the inadmissible evidence). If improper testimony

is elicited, or other inadmissible evidence is offered by either party, the other may raise an objection at the time. Until then, however, the Court finds no reason to exclude Albert's testimony.

For these reasons, the proffered expert testimony of John McGuire and John McGuinn is **EXCLUDED**, although neither is barred from testifying as a percipient witness. To the extent the Motion seeks to exclude Albert's expert testimony, it is **DENIED WITHOUT PREJUDICE**. Plaintiffs are not foreclosed from re-raising their arguments at trial.

Defendants are **ORDERED** no later than **Wednesday December 30, 2009**, to produce to Plaintiffs' counsel a list of all publications he authored in the last ten years, including enough information that the publications can easily be located on Westlaw or Lexis, or online generally. The list need not include publications with no relationship to the advertising, entertainment, or sports industries, or republications of the same article. If any publication cannot readily be located either on Westlaw or Lexis or online generally, Defendants shall produce a copy of it.

The trial in this matter will commence **January 12, 2010 at 9:30 a.m.**, with the Court sitting as finder of fact, and counsel shall appear at that time in Courtroom 9 of the Federal Courthouse in San Diego, California.

**IT IS SO ORDERED**.

DATED: December 16, 2009

*Larry A. Burns*

**HONORABLE LARRY ALAN BURNS**
United States District Judge